Thank you, Your Honor. Doran Bishop, may it please the Court, speaking on behalf of Mr. Luckett. I'd like to reserve three minutes for rebuttal, if I may. Okay, you got it. Just watch your time there, and you'll have left whatever is left on the clock. Okay, thank you. Well, if you're anything like me, who was assigned this case for appeal, your initial reaction when seeing the facts here may have been, well, it's not looking too good for Mr. Luckett. He's caught in a passenger seat following a police chase. And both the accomplice, or the other person in the car, let's put it that way, and the person in the trunk pointed the finger at him. That's right. That's right. I think it would be hard to have it look any worse for your client. Well, yes. And I would point out that at least four jurors were prepared to acquit him a day into deliberations. And from my point of view, Your Honor, I guess where I come out is how far does it get you? How far does it get the State that there are some pretty good circumstantial facts weighing in their favor here? Because the truth of the matter is that by my count, there are more than ten undisputed errors that occurred in this case that led to his conviction. Well, first of all, we're here on federal habeas. We can't consider all errors. We can only consider federal constitutional errors. So it cuts it down from ten to six by my count. Well, I was being conservative when I said ten, so we can compromise and say ten. I hear what you're saying, Your Honor. Well, why don't we talk about them? I mean, you know, I think numbers are not going to get you there. Well, all right. And then we give wide deference to the State courts under AEDPA. Yes. It's very hard to see how in a case that, as you described, this is the sort of two other people involved in the crime, both the alleged accomplice and the victim, both point the finger at your client, and how we can say that the State courts were unreasonable in their resolution of the various issues. But I think we better get to discussing. Let me have at it. Why don't you try your best constitutional claim and see how that fares? What's your best constitutional claim? I think, Your Honor, the best constitutional claim basically is probably the readback issue and the potential absence of the judge from the readback that occurred. That's structural error and no further showing is required. I thought the judge was present. No. No, Your Honor. The record is not clear at all whether the judge was present when the readback occurred. Therefore, he wasn't? I'm not sure I understand your argument. No. No. It seems I'm saying it's not clear from the record whether he was there. All we have is a reference to him telling the jury in the jury room that there's going to be a readback. Your argument is that counsel and the defendant weren't there. It's undisputed that counsel for the defendant and the defendant were not there. But it also appears that the judge may not have been there, Your Honor. And under Riley v. Deeds and Fisher v. Rowe, I mean, that's very, very serious. We know the judge doesn't follow the rules in this regard. This appears to me. Was this raised in the State courts, the absence of the judge? No, it wasn't, Your Honor. It wasn't. We deal with it here. Yeah. It was raised in this appeal, Your Honor. Well, we haven't exhausted the claim. Well, that may not be. Maybe it's appropriate to remand it for an evidentiary hearing. This has been represented pro se up until now. We haven't had exhaustion of the issue before the State court system. And if it hasn't been presented to the State court system, I don't know, no evidentiary hearing is going to make any difference. We can't consider it. All right. I mean, you did present the question of the absence of defendant and his lawyer. We can talk about that.  You've now sort of introduced this issue about the judge possibly not being present. But the reason we don't know that he was present is the record wasn't developed. And the place to develop the record is in the State courts. I understand. And that was not raised before the State courts, the absence of the judge. That's correct, Your Honor. You just sort of made it up here today. No, no. No, it's in the briefing, Your Honor. It's been thoroughly discussed before the court. So I'm not making anything up. The undisputed errors that we have here is that there was a flight instruction that should not have been given. We have a prosecutor. Do you want to finish about the transcripts? About what, Your Honor? About the transcripts. I mean, the feedback, the readback. Sure. Do you want to finish that? Yes. Under California law and under this Court's holding in Fisher v. Rowe, it's a clearly established right of a defendant to be present. Well, but it has to be a clearly established right as established by the Supreme Court. Well, yes. Okay, of the United States. The fact that California law may require it is of interest, but not of great interest here. Well, this Court has interest. Is there a constitutional right as guaranteed by a Supreme Court opinion that defendant and his lawyer must be present during a readback? There is a case called Shields from 1927, Your Honor, but I'm not going to argue that that, especially post-ADIPA, gives that right. This Court in the Hagler v. Board case, in Fisher v. Rowe, and one other case that doesn't come to mind immediately, held such a right exists. So I think this Court has recognized such a right. Well, okay, again, with Judge Kaczynski's comment is, of course, that doesn't have anything to do with ADIPA. Now, maybe your better argument is that Fisher is a post-ADIPA case. It is. And in Fisher, our Court ordered relief under habeas relief based on the failure of a readback. But why is this case like Fisher? Well, this case is like Fisher because unlike in the LaCrosse case where counsel was notified and stipulated that readbacks could take place without them being present, there was no such agreement here. The fact is that the readback that took place was of the entire harrowing experience of the victim rather than simply that portion of the victim's testimony that related to identification. Well, why would you fault a readback that was over-inclusive? Why would you fault a readback that included all of a particular witness's testimony rather than just certain sections? Because it includes the entire testimony about the flight that was inappropriate to begin with because there's no evidence whatsoever that Mr. Luckett was acquiescing in the flight that took place. It would include testimony about the entire harrowing experience of how she was able to open the trunk, and it's reinforcing prejudicial testimony. If notification had been given, it would have been an opportunity for counsel, for Mr. Luckett, to say, let's limit it to the identification portion of the testimony. The other issue is the identification portion of the testimony, not wanting to get me on the readback issue, but, again, I would submit that's very highly suggestive and inappropriate and should not have been allowed in the first place because it was based upon a show-up proceeding that took place at the preliminary hearing. And I don't want to emphasize that too strongly because it's a very – I mean, it's a good argument, but as I said, I – by my count, there are ten other errors that took place in a trial that lasted about a week, and that's disputed. And it seems to me that when you just look at all ten of these things, it's reflective of kind of an attitude that, well, we got our man, and, you know, let's – We don't get to reverse the California courts on the basis of an attitude. No. No. But these are, you know, as we've set forth in our – my papers, Your Honor, I believe these are unreasonable applications of clearly established Federal law. Okay. Well, I guess I'd like to know cases and issues. All right. What cases, what issues do you have that you believe the California courts aired here? Well, the cases, Your Honor, concerning readback have been mentioned, the Raleigh v. Deeds case and Fisher v. Rowe. Concerning the identification issue, it appears that based upon the Supreme Court's holding in Manson v. Brathwaite and Gilbert and others that – and this Court's holding in Domina that what we have here is an identification that took place for the first time at a preliminary hearing, not by means of a show-up proceeding or a line-up or a photo line-up that took place at the time of the incident, but rather three weeks later. And I have no problem if the State wishes to make a tactical decision not to show a line-up to the victim at the time of the incident because her view may not have been very good. But once you make that tactical call, you don't get to have it both ways and at a preliminary hearing say, now, is that the assailant? And she's looking over at a guy in a blue suit chained next to his attorney in a courtroom. It's not very hard for that person to say, yeah, that's the assailant, all right. And then to compound that basically 14 months later with enhanced recollection testimony, to me, that's very troubling. I mean, either the State should say, okay, we're not going to rely upon this victim to identify the assailant, which is perfectly reasonable. Okay. So which cases should the California courts have read and understood that this was an error of constitutional magnitude? Manson? Manson, Braithwaite. And what principle do those cases establish? Well, they establish the principle that an unduly suggestive identification runs afoul of due process. That's a very, very high – that's a rather high level of abstraction, isn't it? It is. It stands for a general principle. And how are the California courts supposed to know by reading that standard that this was unduly suggestive that they were clearly violating Supreme Court precedent? Well, each of these cases is very fact-intensive. And so the established right comes from pronouncements of the Supreme Court, and the court has to do its best to understand what it means to have a suggestive identification. What the court has said is don't have unduly suggestive identification procedures. Now, how is California supposed to know that applying that standard that this identification was unduly suggestive? If you were here on direct appeal, this might be a very different – a very different proceeding, might be a very different argument. But you've got to argue to us that the California courts were so wildly wrong here in their understanding of what's unduly suggestive that we ought to step in and correct their judgments for them. I understand. This is a heightened showing. It's habeas. What you'd want us to say is that all show-ups are improper. Well, that would be great. I don't think it's necessary for the court to say that. What would be the rule here? Remember, again, what you'd have to do is come up with a rule that you can find in the Supreme Court authority. What would be the – so I understand the rule, anytime you show a witness, the defendant, and, you know, in a show-up situation, that's constitutionally – so taints that indication. That's suggestive, yeah. I'm not sure it taints it. I don't think you need to say that. I think a rule may be that anytime you show a witness, the assailant, and there's no jury present, and that's the identification upon which it's based, then that's defective. Because the truth is, the jury doesn't show up until – Where does that get you? So that's defective. Does that mean that the witness can no longer identify the defendant in the trial? So once she sees him in that situation – let's say we agree with you that show-ups are bad. And maybe even let's say we say the Supreme Court says show-ups are bad. But they go ahead and they have a show-up anyway. They get the witness and the defendant in a situation where there's only one choice, and that's him. What comes next? What flows from that? Well, in this case, what would flow is you would not permit the victim to give testimony identifying Luckett at trial. Is there anything in the Supreme Court jurisprudence that supports that? That's a pretty drastic – To import it to the show-up context in court – Yes. To import it to the setting where the identification takes place initially in court without a jury present. You're right. There is not a specific Supreme Court case that's addressed that. There are cases that say if suggestive identification is void – Sure. And I would argue that that's essentially what we're talking about. But you want to argue one step further to say because there was the show-up at the preliminary hearing, so the witness saw him, he was there in sort of the blue jumpsuit or whatever prisoners wear. He probably had manacles on and so on. She could tell who was the bad guy there, so it's very easy, she points out, it's that guy. You don't talk about that, but then next she's in court and she sees the same guy now cleaned up for the jury. But she still remembers that this is the guy that she saw in the manacles and the blue jumpsuit, right? And she gives additional testimony, too, about remembering a whole bunch of other stuff about him 14 months later. That's interesting, but not really what I was inquiring about. Okay. I would argue that that's the product of backfilling or there's a risk that precisely because it was suggested the first time around, this enhanced testimony – So she is there and she identifies him. Let's not talk about the backfilling or anything else. Would you say, what, that at that point she can no longer identify him in court because she has been tainted by the prior show-up? What happens when a witness – is that witness precluded from testifying at all because she can relate to all this evidence, but she can no longer point to the defendant, you know, he's the one, and therefore she can't make her testimony relevant to the issues in the case? What exactly, in your view, happens if you have one of these, as you say, improper show-ups? I would not allow the testimony at the trial because the jury can't assess. That's what I thought you were saying. I just wanted to make sure you sort of came on. So what you're saying is if there's a show-up, that witness is dead for the prosecution. Could be the victim, could be the key witness, could be the accomplice, could be a third-party witness, could be the, you know, the bishop that happened to be crossing the street at the time and happens to look in the direction and sees the defendant. It doesn't matter who it is, right? That testimony is struck. If it's not a – That is the kind of rule that I would expect the Supreme Court to have adopted before we weighed in and adopted ourselves, especially in the AEDPA context. Is there anything at all in the Supreme Court authority that supports that? No, not based on those facts. You'd have to – Why isn't that the end of your AEDPA argument, then? Well, because there are – The show-up issue. On the show-up issue, that's the end of my argument. That's the end of my argument, and I do believe the Court can still consider the suggestive nature of the identification. And it goes to a cumulative impact argument. It goes to a number of other issues here. Okay. I see I have approximately two minutes left, so I'll reserve the remainder for rebuttal. Thank you. Good morning, Your Honors. California Deputy Attorney General Adrian Tenault on behalf of Respondent. How are you? I'm great, thank you. How are you, Your Honor? Anything you heard here today that you think is not adequately addressed in your brief? Just two points, if I may. I guess there are things that we can – Yes, there are, Your Honor, to answer your question. It's always good to have a candid admission like that from counsel. Go ahead. I have just one procedural question. You didn't raise procedural default or exhaustion, whatever is appropriate here. There are some issues that were presented in the State courts but which did not produce any rulings by the State courts. Are you waiving any claims with respect to those? You're not raising it. You know what, Your Honor? I did not raise them in my briefing. But if – in the discussion that the Court had with counsel, if that show-up procedure was ruled to be structural error, that would be a TIG bar, I believe. And it is a matter of not being exhausted. As to the judge not being present, I didn't really understand the claim to have molded into that claim. But that is an aspect of the claim that has not been exhausted, and we would not be waiving that issue. And as to the other procedure, I'm sorry, I forgot what was the question about the other procedure besides the exhaustion issue? Well, I assume what you're telling us is that you are not asserting that any of the issues that were raised in the appellant's brief were not exhausted in the State courts or are subject to procedural default in the State courts. Well, as — And if there are, you're waiving them. Because you didn't raise them. That's correct, Your Honor. Well, that's really all I need to know. That's correct. I did not raise them in the brief. But just as to the victims, the one other thing that I want to mention was, Your Honor, you mentioned the blue jumpsuit and the victim observing that individual. That was the co-defendant or co-individual, Hudson, not Luckett, in this matter. And with that, I will submit on our papers. You're saying there was no show-off? No, Your Honor, that's not — the — there was an in-court identification of Mr. Luckett as the assailant who pointed the gun at the victim. But the individual in the blue jumpsuit, from my reading of the record, was Hudson, the — Was he wearing a yellow jumpsuit? You know what? There is nothing in the record as to what jumps — the blue jumpsuit, I believe, was at the time of the crime. Mr. Hudson had on a blue jumpsuit when they kidnapped the victim and ferried away with her in the car. But as to whether or not the defendant had on what clothes he had on at the preliminary hearing, the record does not indicate anything about that. He was — he was in custody. Yes. So it was no mistaking who it was that he was wearing. Well, he was — A prison garb, which is probably what he was wearing. He probably was wearing manacles. No. Not necessarily. No, Your Honor. I don't think that the record supports that. I don't believe that that assumption can be made. My experience in San Diego Superior Court is that defendants are dressed out, even for preliminary hearings, and that there are not physical restraints put on the defendant when they sit at — they sit at the defendant's table next to counsel unrestrained. And there's nothing in this record to indicate that the defendant was dressed in prison garb or jail garb and that he was restrained, and therefore, I don't believe that that is an assumption that can be made. The same is true as to whether or not the judge was present for that readback. And with that, I would submit, Your Honor. Thank you, Your Honors. Well, Your Honors, I'm not liking my chances at the moment. If there are any specific questions, I'd be happy to address them. But it seems to me that the arguments set forth in my brief indicate a series of undisputed errors that, in certain cases singly and other cases collectively, suggest that there was a violation of due process here. And the State saying, oops, my bad, repeatedly in their brief, after a while, doesn't cut it. Thank you. The case is argued with testimony.
judges: Kozinski, O'scannlain, Bybee